Judge Marshall
delivered the Opinion of the Court.
In March, 1819, John W. Reed, John Murrell and Ambrose Lee, who had previously been partners in the business of merchandising, dissolved their partnership; and Murrell, who purchased the interest of the other partners, became entitled to all the debts due to the late firm, and bound himself to pay all demands against it. On the first of May, 1819, John Murrell, James Reed, John W. Reed and James Murrell executed to Ambrose Lee, their joint and several obligation for the payment of six thousand and sixty-four dollars and fifty-one cents, on or before the 25th day of March, 1820, which sum was composed of $>5,513 38 due to Lee, on account of his interest in the store, and $551 13 being ten per centum interest on the debt, for one year from the date of the dissolution of the firm.
Immediately upon the dissolution of the firm of Reed, Murrell and Lee, Murrell appears to have erected another one in its place, of which James Reed, Robert Miller and himself were the members; and in November, 1823, this firm was again modified by the substitution of Joseph Cooper in the place of Miller.
During the whole of this period, from March, 1819, and until the death of Lee, in June, 1825, an account seems to have been kept open in the store, against Lee, and in favor of John Murrell alone, consisting of merchandise furnished to Lee, of moneys paid to his order, and of debts due by him and taken in at the store, &c.
This account appears never to have been presented, or in any manner settled or closed, during the life of Lee; nor is there any direct proof, that he had ever seen it, though from his intimacy in the store, some of the \yituesses say he might have done so*
Bill
In September, 1825, about three months after Lee’s death, John Murrell, accompanied by J. W. Reed and James Murrell; parties to the above mentioned note, and Miller and Cooper, who had been at different periods partners in the store, presented the account to the administrators, with the affidavits of Miller and Cooper, stating the correctness of the respective portions of it which accrued while each was concerned in the store, and obtained from them two credits making the full amount of the account, on the note of Murrell &c. to their intestate, A. Lee. The first of these credits, amounting to $1,622 43, consisting of the items charged prior to the 25th day of March, 1820, when the note became due, together -with interest at the rale of ten per cent, per annum, h'om the date of the several items to the 25th of March, 1820, was credited as paid on that day. The second, consisting of all subsequent items, with interest from the date of each, or of small groups of them, up to the first day of September, 1825, and amounting $5,406 63, was credited as paid on the last named day. On receiving these credits. Murrell gave up to the administrators, su<?h vouchers as he had to support his charges; and a writing was executed by the adminstrators, the two Murrells and J. W. Reed, stating that there had been a settlement of the accounts of Ambrose Lee with John Murrell&emdash;setting forth the amount of the credits, and providing that, “should there be any errors in the calculations of said accounts, the undersigned parties agree to rectify any mistakes therein.”
In the course of the. year succeeding this settlement, John Murrell died, and in 1828, James Murrell being also then dead, the administrator of A. Lee commenced an action at law against the surviving obligors, for the recovery of the balance due on the note. About the same period., they also filed this bill in Chancery, against James Reed and J. W. Reed, surviving obligors, and Robert Miller, as administrator of John Murrell, and J. W. Reed and George Murrell, as administrators of James Murrell. The object of the bill was to restrain the parties from taking advantage, in the action at law, of the credits entered on the note; to suspend their effect until *111 the accounts between Murrell and Lee could be properly investigated; and finally, to re-adjust the accounts, and abate the amount of the credits, by deducting certain charges in Murrell’s account, alleged to be excessive, or , & •• _ otherwise incorrect, and by deducting certain items charge in favor of Lee against Murrell, which were omitted in the settlement, and which, as they allege, formed proper subjects of the accounts between the parties, and should have been embraced in the settlement.
Answer,
Besides impeaching the settlement, as being incorrect in various particulars embraced under the two general allegations just mentioned, the complainants state that, at its date, they were but little acquainted with the transactions between Murrell and their intestate; that they had not time to examine the accounts and vouchers when they were presented for settlement, and were unwilling to enter credits, for the full amount until induced by the promise that a writing should be executed securing the right of future examination and re-adjustment of the credits; that the writing already alluded to was understood by them to secure that right and to have been so intended, that if it was otherwise intended, or if a more restricted construction is now insisted on, confining its provision to the correction of mistakes in calculation only, it was a fraud upon them, and they were decoyed into giving the credits. They allege, also, that the estate of John Murrell is unable to discharge the demands set up by them in the bill, as items which should have been taken into the settlement before the balance to be credited on the note could be correctly ascertained.
The defendants answered—denying the material aliegations of the bill; relying on the settlement and the credits entered in pursuance of it, as fair and final; contesting the claims brought forward as a set-off against Murrell’s account; affirming the correctness of that account, and alleging that, the paper executed after the credits were-entered, was intended to provide for the correction of mistakes in calculation only; but admitting the propriety of correcting any mistake in the account, which should •be satisfactorily made out in proof.
Decree of the circuit court.
A settlement of aco’ts between parties, each of whom is conversant with the transactions involved, is binding and ¿conclusive; the acc’ts will not be reexamined in chan eery, unless fraud or mistake in the settlement is alleged, and established by clear proof. Though much slighter evi dence may prevail against the conclusion resulting fromthesettlement, where one of the parties (e. g. an adm’r) had little or no knowledge of the transactions settled, and relied upon the representations and ex planations of the other. But even then, the settlement will be considered ' prima facie fair, and will be disturbed so far only, as improper charges, omissions, fyc. are specifically charged in the pleadings, as the results ' of fraud or mistake, and sustained by proof; and the reasons for such strictness are the stronger whea the vouchers used in the settlement weregiveijL ,up to the com. plaining party;.
*112 On the hearing, the bill was dismissed, with costs* But the action on the note having been dismissed, by agreement, and the whole matter in contest referred to the decision of the Chancellor, in this suit, the Circuit Court decreed against the defendants, the balance 'appearing to be due on the note, after giving full effect to-the credits endorsed. To reverse this decree, and to obtain a decree for a portion of the sum covered by the receipts, the complainants prosecute this writ of error.
A settlement concluded between parties, each of whom may be presumed to be acquainted with the transactions involved, is entitled to great consideration, as furnishing high evidence of the correctness of its results. But it loses much of its authority when it appears, that the matters brought into the account rest exclusively or principally within the knowledge of one of the parties, and are received and admitted by the other, upon his representations. In the first case, however, the settlement is not deemed so conclusive but that it may be impeached on the ground of fraud or mistake; and in the other, it is still held to be sufficient evidence of the truth and fairness of its results, until fraud or mistake is established. But as fraud may be more easily practised, or mistakes more easily occur, in the latter than in the former case, reason as well as authority indicates, that slighter evidence of fraud or mistake will induce the Chancellor to open the settlement, and look into the accounts, in the one case than in the other.
From a careful consideration of all the circumstances of the present case, we are satisfied that the complainants had, as they allege, but slight knowledge of the transactions between their intestate and John Murrell; that, although they knew there had been extensive dealings between them, and one of them may have known some few particulars of their business, neither of them had such a knowledge of the subject as to enable him, upon, a bare inspection of the accounts, to decide upon any considerable portion of them. We are also of opinion, that they had not, before the credits were entered, any fair opportunity of making that full and satisfactory scrutiny of the accounts, which their magnitude and *113 ¡complexity required* The accounts never were before them for their deliberate examination and indvidual decision. But were brought to them, prepared with great labor, and extended, by minute calculations of interest, to the utmost possible amount, for the purpose of being admitted and credited on the note; and it is sufficiently apparent that they were admitted, not upon the knowledge of the administrators or their investigation of the vouchers, but either upon the suggestion that there might be a future examination and a re-adjustment of the credits, or upon their confidence in the statements and explanations of Murrell and his companions, all of whom were anxious for, and all more or less interested in, his obtaining credit for the full amount.
Under this view of the circumstances attending the ■settlement, we think the receipts are much less conclusive, and may be invalidated, as to any particular portion of the sum included iu th.em, by much slighter evidence’ íhan if the settlement had been made upon full investigation by the administrators, or between parties possessing equal knowledge of the subject. But they must still he considered as privia facie evidence to the whole extent, subject to be rebutted by satisfactory proof, under ¡proper allegations in the pleadings, and pointing directly to particular items as improperly allowed or omitted, under the influence of mistake or fraud. The observance of this principle, founded upon a general regard for the stability of private settlements, is especially required in the present case, when the principal agent in making the settlement, and the party most intimate with all the ¡transactions involved, is since dead, and the opposite party, who seeks to open the accounts, is in possession of the vouchers. There might be great injustice done., .and would certainly be great room for imposition, if the rsettlement and receipts were to be held for naught, as contended for by the complainants, and the defendants were subjected to .the burthen of pvoying the' whole .account.
After stating, thus explicitly, the principles applicable to the investigation before us, we deem it unnecessary to detail the .evidence relating to the particular objeo *114 lions or grounds of impeachment, urged against this settlement. These objections, as already intimated, are of two classes—the first comprising surcharges or falsifications of the account as rendered and admitted in the settlement, the second comprising items wholly omitted from it.
A note paid to the holder at the request of the obligor ; the sum charged to him, in the settled account, exceeds the note and interest; mistake presumed, and the excess rejected.
A payment made in depreciated bank notes; the nominal amount charged in the settled account: the charge reduced; same as to interest upon it.
An account against a decedent—contained numerous items for interest on other items—so many that they could,not have been overlooked by the adm’rs when they settled the account, and being aware of the nature of thoseitems, they are bound by the settlement, so far as legal interest only is charged. Usurious interest on either side, (in notes or accounts) must be reduced, to the lawful rate. Where the debt on one, side, is by note bearing interest, and the set-off on the other, is by an open account— for money and goods, paid to, Sr tor, the holder of the note, the allowance of interest on each item of the account, from its date to the time of settlement, is equitable.
*114 The first item of the account which we think has been successfully assailed is the charge of eight hundred and five dollars “the amount of Farris’ note to Hays, paid to Hays by Lee’s direction, with interest to the 1st of March, 1820.” The amount of this note on the 1st of Septemher, 1819, when it was assumed by Murrell, was six hundred and sixty dollars, and so far as the charge exceeds tiiis sum, with interest from the day last named, it is without foundation, and the excess should be rejected from the account.
2. The item of forty-four dollars charged as paid to Wm. F. Lee, per order, on the 5th of October, 1821, was paid in Commonwealth’s Bank notes, then depreciated, and there is no evidence of any agreement, express or implied, on the part of Ambrose Lee, to credit the nominal amount in specie on this note. Interest is also charged on the full amount of this item from its date to the 1st of September, 1825. The amount of the order should be reduced to its specie value on the 5th of October, 1821, and a corresponding change should be made bí the interest calculated upon it.
The complainants also object to another order, as having been paid in paper, and charged at its nominal amount; but they have adduced no evidence in support of the objection. They allege too, fin general terms, that some portions of the account are in Commonwealth’s paper, charged at the nominal amount in specie, and we think there is little doubt, from the evidence, that some portions of the merchandise account are so charged. But neither the allegations, nor the proof, are sufficiently explicit to enable or to authorize us to say, that any specific portion of it should be reduced, under this general objection.
3. Another objection is, that interest is charged upon the whole account, which the complainants say “is not *115 allowable, and they would not be justifiable in allowing.” But they have allowed it; and, as it is impossible to bestow the slightest attention on the account, without seeing, that the charge of interest was an item of constant recurrence, at short intervals, throughout, we are compelled to assume, that they allowed it knowingly. We cannot, therefore, do more than correct the charge so far as it is actually illegal. The principle on which it was made and allowed, was doubtless the equitable one, that as the note which Lee held on Murrell &c. was bearing interest, it would be but just that the account which was intended mainly to pay that debt, and of which much the largest part consisted of money paid and debts assumed, should also bear interest; and although the mode of applying the principle, is not such as the Chancellor would direct, the parties had a right to adopt it; and they having done so, it should be adhered to.
Detail of circumstances establishing the conclusion that, two sums, one receiv ed for, the other paid by, a party, ought to have been included in his account, upon settlement with the other party; but as they were not included, were then unknown to his adm’rs by whom the settlehient was made; presumed,, that they were excluded by fraud or 'mistake, and the account, in that respect, corrected.
*115 On a portion of the account, as has been already stated, interest is charged at the rate of ten per cent, to meet the ten per cent, interest which was. included in the the note. In correcting the settlement, on the prayer of the complainants, we think the usurious interest on both sides should be rejected from the account. And that the sum originally due to A. Lee, with legal interest from the 25th day of March, 1819, is all that the complainants are entitled to claim on account of the note. Whether they are entitled to claim anything else, as a set-off against Murrell’s account, before its items can properly be applied to the payment of the note, is the next enquiry.
4. Two items are set up by the complainants, as having been improperly omitted in making the settlement and ascertaining the sum to be credited on the note: first, $180 60, with interest from the first of May, 1819, to which Lee was entitled, but which was received by Murrell, and, second, $1012—the amount of a note which Murrell was bound to pay, and which was taken up by Lee, on the 18th of August, 1819. The proof leaves no doubt, that Murrell was once liable for these items; and we arc satisfied that they never have been discharged, unless by countervailing items in his ac *116 count against Lee'. It is not only apparent, that these liabilities of Murrell were not allowed in the settlement,but it is conceded on all hands, that they were not mentioned or alluded to on that occasion, That they were proper subjects to be introduced into that settlement,, ¡a sufficiently manifest, from- the fact that it was a settlement of the private and individual accounts between Lee and Murrell, made for the purpose of ascertaining the correct balance, and placing it as a credit on the note. r
Mutual accounts; Settlement; balance ascertained, and credited by the party who owes it, on a note he holds on the other; receipts passed:—bill in chancery to impeach the settlement for fraud or mistake, to abtain allowances for items omitted, surcharges, ¿re, held,. that, because of the mutuality of the transactions, the right of set-off—charges by one party having the effect of payments to the other,- the inseparable connection of the matters of account—thebar by lapse of time Cannot be resorted to,to prevent the correction of the accounts.— The parties are thrown back to the time of settlement; and the ch’r will do what they would have done then, had there been no fraud nor mistake; hence, the bar is available bnly so far as it blight have been -————. pleaded to a suit on the account, at time of the where items on Within ^the*statute, were yet aitfement” adjust" the presumption Mothershierin the same predieS0; ilave a(j. W11.®^
*116 But there are other facts which authorize the further inference, that these liabilities were looked to by the parties, and in fact created with the view, that they should meet that portion of Murrell’s account which accrued about the same period. In 1819, Lee had no right to- demand any payment from Murrell, on account of the note, which was not payable until the 25th of March, 1820; and yet the account shews that, during that year, Murrell paid or assumed for Lee, various sums, to the amount of twelve or fourteen hundred dollars. It is proved that, about the same time, Lee was scarce of funds; that in taking up the note for which Murrell was bound, he gave his own note for it, and obtained long indulgence; and that on the principal debt which Murrell took up for him, he could not expect indulgence, or could not ask it, in consequence of the unfriendly relations subsisting between him arid his creditor. These circumstances lead to a probable explanation of the motives which induced each of the parties to take up the note or notes of the other, and authorize the inference, that their mutual assumpsits were made in consideration of each othei-.
As to the sum of $180 60 received by Murrell for the use of Lee, it was but so much of Lee’s money in his hands, applied to the payment of Lee’s debts; and of course, extinguishes so far the liability of Lee on account of such payment, or rather prevented him, to that extent, from ever being liable.
There was then, in our opinion, a mutual connection between these liabilities and that portion of Murrell’s account which accrued in, 1819, and before his note fell *117 due, which attached them together as the mutual consideration of each other, and as a mutual set-off, so that they could not properly be separated, but by consent of the parties. When, therefore, Murrell and the administrators of Lee met for the purpose of settling the ac-1 T I T- , 11 counts between them, and crediting the note of Murrell &c. with the balance, these liabilities were not only adnnssible, but essential ingredients of a fair settlement, and without them the proper credits could not be ascertained—unless the administrators waived the application of them to these accounts, and were willing to consider them as constituting a separate and independent demand against Murrell. Of this there is no proof. On the contrary, these items were not alluded to on the occasion. And this and other circumstances appearing in the cause, sufficiently authorize the conclusion, that the administrators were, at that time, wholly ignorant of the. existence of these items, as a demand against Murrell, and that the failure on their part to introduce them as a set-off against Murrell’s account, is to be attributed entirely to their ignorance of the subject. Whether Murrell, who must once have known all the facts, had forgotten them, or whether his omission to mention them resulted from a desire to evade his liabilities altogether, or from an anxiety, increased doubtless by that of his co-obligors and sureties, to obtain as large a credit as possible upon the note, leaving other matters to be set-. tied as they might be, in future, it is not necessary to en-quire. If he had forgotten them, their omission from the settlement was the consequence of mutual ignorance or mistake. If he failed to mention them, designedly, either for the purposes above supposed, or because he thought it belonged to the other side to know and bring them forward, their omission is attributable to ignorance on the one side, and to an improper, if not an inexcusable, suppression of the truth on the other. And in either case, the party thus injured by mistake or fraud, is entitied to relief in equity, by introducing the omitted items, with the same effect as if they had not been omitted.
The attempt to bar the demands now set up, by the statute of limitations, is sufficiently answered by the *118 view which has been taken of their connection with the account of Murrell, against which they are presented as a set-off. But if there was no such connection, we should think the plea inadmissible in this case. If these demands had been known and urged by the administrators when the settlement was made, they could not have been excluded on the ground of the statute of limitations, without putting it in the power of the administrators to exclude, on the same ground, a larger sum contained in Murrell’s account, and which was equally barred by the statute. They were deprived of this advantage by ignorance of the facts on their part, and a suppression of them on the other, and they admitted that portion of the account which was barred by time, because they were persuaded it was just, and knew of no counter demands by which it had been, or ought to be extin-; guished. The object of a Court of Equity in opening a'1 fraudulent or mistaken settlement, is to obviate the ef-j fects of the fraud or mistake, by placing the parties up- ;, on that footing of equality which they would have oc- j cupied, if there had been no fraud and no mistake, or I ignorance of facts. But to allow the plea of the statute / in the present case would be to confirm, and not to de.-| feat the effects of the fraud or mistake. And it-would! be as directly inconsistent with the object and princi-1 pies of the Court, as it is manifestly unjust and oppres-, sive in its consequences. The fraud or mistake being j shewn, and an injury consequent upon it, the Court will] correct the settlement, by doing that which the partiesJ themselves, in the absence of fraud or mistake, might be expected to have done. It will, in effect, throw them back upon the settlement, with that equality of knowledge, the want of which produced the injury complained of.
One party holds other? tcfwkich there are sureties; there are also, mutual accounts; a settlement takes place between them Cor their representatives, after the death of one or both,) and the balance being in favor of him who owes the note, is credited upon it; afterwards a bill in chancery is brought to impeach the settlement for fraud or mistake, and reduce the amount of that credit: held, that, the transactions being between the principal and his creditor—not payments by the sureties, they stand on the same ground with the principal, and cannot resist the correction of the accounts, nor the consequent diminution of the credit on the note, though thereby, the principal being dead, in-¡sol vent, the payment of a larger sum may devolve on them.
The co-obligors of Murrell, of whom two, an d per-haPs three, are his sureties, are entitled to nothing *119 more in this contest than Murrell himself, or his administrator, would be if he stood alone. They claim the benefit of the credits given on the note, not because those credits are evidence of any thing which they have paid or done towards discharging it, nor because they have been induced by the entry of the credits, to do or omit any thing which they would not otherwise have done or omitted, but solely on the ground that they evidence the result of the accounts between Lee and Murrell. They had no right at the time of the settlement, to resist the introduction of any matter which appropriately belonged to the individual accounts of those parties, or to claim a credit on the note for any thing more than the fair balance of the accounts; and they have no right now to resist the correction of the settlement and of the credits founded upon it, by a reduction of improper charges, admitted through fraud or mistake, or by the introduction of new items omitted from a like cause. They must abide the result of a fair settlement of the accounts upon the equitable principles which have been pointed out.
Decree directed*
The decree is reversed, and the cause remanded, with instructions to re-adjust the settlement of accounts between Murrell and A. Lee: first—by correcting the principal and interest of the two items of eight hundred and five dollars paid to Hays, and forty-four dollars paid to William F. Lee, as above directed. Second. By reducing the interest charged in the first part of Murrell’s account, from ten to six per cent. Third. By applying as credits to the same part of the account, the sum of one hundred and eighty dollars and sixty cents, as paid by Lee to Murrell, on the 1st day of May, 1819, and the sum of one thousand and twelve dollars, as paid on the 18th day of August, 1819. Fourth. The balance which, after crediting these two sums, may remain in Murrell’s favor upon that part of the account which accrued before the note to Lee became due, is to be credited as paid when the note became due, and the residue of the account corrected in the single item of ‡44, and its interest as above, is to be credited as paid on the first day of September, 1825, as is done in the settlement made *120 by the parties. And as there is usurious interest for one year included in the note of Murrell &e. to Lee, in applying the credits to it, and ascertaining the balance remaining due upon it, the note should be considered as if given for the sum of $¡5513 38, with interest, at the rate of six per centum per annum., from the 25th day of March, 1819. . For the balance appearing due on the note on the first day of September, 1825, to be ascertained in the manner now prescribed, together with legal interest on that balance, from that day until paid, the ■complainants should have a decree against the defendants in the several capacities in which they stand liable.