C. F. KRAUSHAAR, Respondent, v. WILLIAM BRANT, Appellant.

### St. Louis Court of Appeals, May 4, 1886.

EQUITY—FRAUD—MISTAKE—ACCOUNTING.— RESCISSION. — The plaintiff and the defendant, being the stockholders of a business corporation, agreed that the defendant should purchase the plaintiff's shares of stock at their par value and should pay him the amount found to be due him on an accounting ; and, either through fraud or mistake, the defendant, by exhibiting to the plaintiff a false statement of the accounts, induced him to settle for a much less sum than was actually due him. *Held*, that the plaintiff was entitled to recover the difference, with interest, without rescinding the contract.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Affirmed.*

BROADHEAD & HAEUSSLER, for the appellant : Equity will not relieve against mistake, where the party complaining had within his reach the means of ascertaining the true state of facts, and neglected to avail himself of his opportunities of information. Kerr on Fraud, 406–7 ; Story Eq. Juris , sect. 146 ; *Brown v. Fagan*, 71 Mo. 563.

MUENCH & CLINE, for the respondent : In this case there were complex, mutual, and unsettled accounts, and, hence, equitable jurisdiction attached, if only to prevent multiplicity of suits. 1 Story Eq. Jur., sect. 457, *et seq.; Biddle v. Ramsey*, 159, 160. The fact that, upon such accounting, cancellation of instruments executed by the plaintiff, held by the defendant, alleged to have been satisfied, and refused to be delivered, was sought by the bill, alone furnished grounds of equitable jurisdiction. Story Eq. Jur., sects. 707 and 705 *b*.

THOMPSON, J., delivered the opinion of the court.

This action is in the nature of a suit in equity for an accounting and to compel the delivery up and cancellation of two promissory notes of the plaintiff held by the defendant. The answer sets up that there was an accounting together and settlement between the parties on the fifteenth of July, 1885, of all matters of account between them, upon which the defendant gave the plaintiff $730.87, and his promissory note, maturing in thirty days, for the additional sum of one thousand dollars, which was afterwards paid. A reply sets up, in substance, that the settlement was imposed upon the plaintiff by means of false representations and the exhibition of a fraudulent account. The court gave a decree for the plaintiff in the sum of $2041.68 principal, and $35.73 interest, being in all $2077.41, and ordered that the notes be delivered up to the plaintiff or produced in court for cancellation.

Some difficulty might arise in sustaining the decree of the court, but for the fact that, at the trial, the pleadings being read and the defendant having objected to the introduction of any evidence to sustain the new matter set up in the reply, the court sustained the objection and gave the plaintiff leave to amend his petition, whereupon the defendant withdrew his objection and agreed to try the case on the pleadings as they were, and to waive the question whether the attack on the alleged settlement should be made in the petition or in the reply. The substantial allegation of the reply, read in connection with the petition, was, that the plaintiff and the defendant, being jointly interested in a manufacturing venture which had been incorporated, called the Western Bath Tub and Manufacturing Company, agreed that the defendant should buy out the plaintiff's interest on the basis of its par value, the same being $4750, and upon that basis should pay to the plaintiff what should be found due him upon accounting together; that by means of false representations and the exhibition to the plaintiff of a false

and fraudulent account, the defendant induced the plaintiff, who was ignorant of book-keeping and a plain mechanic, to believe that the sum of $1730.87, and no more, was due him, and thereby induced the plaintiff to transfer to the defendant, for the sum named, the plaintiff's shares of the stock of the company; whereas, upon a proper accounting, a much larger sum would have been found due to the plaintiff on the basis of the agreement of settlement.

The evidence satisfies us that this charge has been made out. It shows that in the spring of 1885, the plaintiff being in the bath-tub manufacturing business, and his factory having been destroyed by fire, and he, being in need of money, agreed to take the defendant into his business with him; that an inventory was taken of the effects in this branch of the plaintiff's business, showing the total value of the same, after deducting a mortgage of $3,500, to be $13,903; that, after a protracted negotiation, it was agreed between the plaintiff and the defendant that a corporation should be formed to own this property upon the basis of a stock capital of $9,500, at its par value, of which the plaintiff should own one-half and the defendant the other half, less one share taken by Mr. Mueller, the defendant's father-in-law; that the corporation was formed; that the personal property of the plaintiff in the bath-tub manufacturing business was transferred to it by bill of sale, and the real estate on which the factory was situated, by warranty deed; that after the plaintiff and the defendant had thus carried on the business about a month, they disagreed and found that it was impossible to get along together and made propositions for the purchase each of the other's interest; that the plaintiff, being out of money, was unable to purchase the defendant's interest for cash, but made him a proposition to purchase it on a credit secured by a mortgage upon the property, which the defendant declined; and that the defendant finally agreed to purchase the plaintiff's interest at its par value, as represented by his

stock, and to pay him what would be found due after adjusting the accounts between them, giving the defendant credit for the advances made by him to take up the debts of the old concern owned by the plaintiff, and charging him with sums which he had collected for the plaintiff since the new concern had been organized, he, the defendant, having had entire charge of its finances; that, for the purpose of making this settlement, they met together on the fifteenth of July, the plaintiff being alone, and Mr. Mueller being with the defendant; that the defendant brought with him what purported to be an account, drawn up by the book-keeper of the concern from the books (called in the record "Exhibit B"), and, by means of the items therein contained, succeeded in convincing the plaintiff, who was not an accountant and who is evidently an unlettered man, that the proper amount coming to him on the settlement, on the basis agreed upon, would be $1730.87; and that the plaintiff, supposing that this was correct, was glad to settle on those terms and received from the defendant in cash the sum of $730.87, and, also, his note for the sum of one thousand dollars, at thirty days, which was afterwards paid.

During this interview the defendant, according to the testimony, seems to have been considerably excited, as he well might have been if he was conscious of the nature of the account which he was exhibiting to the plaintiff, and dropped on the floor an envelope containing on it some figures in his own hand-writing, arranged as follows:

$13,000.0·    .    $9,500.00
                   $4,750.00
"Paid for K.
     $7,765.73"
     $1,734.27        $3,015.73"

Upon picking up this envelope and looking at those figures after the defendant had gone, it dawned upon the plaintiff's mind that he had been imposed upon, and,

after consulting with counsel, he, on the twenty-seventh of July, demanded another settlement, through · his attorney, and the defendant on the same day replied to the attorney by letter, stating. that he had "none to make."

The account, Exhibit B, which was exhibited by the defendant to the plaintiff at the time of this settlement, is admitted, both by the defendant and by the book-keeper, who drew the account off, at the request of the defendant, to have been incorrect in certain very important matters. On the one hand, it failed to charge the defendant with the item called the Rumsey notes, amounting to $955.57, and another item, called the two Weaver notes, amounting to $1752.55, being notes of the plaintiff on account of the business of the old concern, which the defendant had taken up with his own money. On the other hand, it failed to credit the plaintiff with the one-half interest in the concern which the defendant had already purchased at $4,750, according to the interpretation of the exhibit by the plaintiff's counsel, or else it failed to place on the credit side the $4,750, representing the other half interest which the defendant was about to purchase—it is immaterial which. The result was that the defendant exhibited to the plaintiff an account which, leaving out the items and stating only the aggregate amounts, charged him with moneys advanced by the defendant for the plaintiff in the sum of $5,246.18 ; credited him with one-half interest in the concern, transferred to the defendant, $4,750; also, with moneys collected by the defendant belonging to the plaintiff, $2,227.05 ; and closed as follows :

"By amount due C. F. Kraushaar in full settlement of his account and purchase of his entire one-half interest in said Western Bath Tub Manufacturing Company, $1,730.87." It is perceived that $1,730.87 is exactly the sum necessary to balance this account, and is exactly the sum which the defendant would have been required to pay the plaintiff on the basis of this account, assuming

it to be correct, for the plaintiff's interest in the concern; and this was the amount which the defendant did pay. It is apparent that there was here either, a gross mistake on the part of the book-keeper, the defendant, and the plaintiff, or else a gross imposition practiced upon the plaintiff by the defendant. The book-keeper and the defendant, when interrogated as to the reason why an account so misleading had been made out and exhibited to the plaintiff, for the purpose of effecting the settlement, sustained a cross-examination so poorly that the circuit court was certainly charitable in attributing the settlement made upon the basis of it to a mutual mistake.

But whether the settlement was a mutual mistake of both parties or the fraud of the defendant, is immaterial in the eye of a court of equity. Equity relieves alike against frauds and mutual mistakes, where the evidence is clear. If the exhibition of this partial and misleading account was a mere mistake, as the defendant and his book-keeper would have us believe, it is unconscionable for the defendant to keep the benefits which he has acquired through the mistake. It is true that he does not ask to be permitted to keep them. He offers to re-convey the entire property to the plaintiff, if the plaintiff will only refund to him what he has put into it. This offer he might very safely make, knowing the inability of the plaintiff to do so. If the plaintiff were asking merely for the rescission of a contract, he would be bound to tender back what he had received under the contract. But a court of equity may vary its relief to suit the exigencies of each particular case. It has power to decree that the defendant specifically performed the contract which he really made. It is very plain here that what the parties intended to do was to settle the matters of account between them, in respect of this corporation, upon the basis of the defendant getting credit for the advances which he had made on account of the plaintiff and taking the plaintiff's shares of stock in the concern at its par value. That, we have no doubt, is what the

defendant led the plaintiff to believe that he was giving him and what the plaintiff supposed he was getting. The defendant strenuously denies this, and claims that nothing was said about the value at which the plaintiff should transfer his shares to the defendant, but that he simply offered to buy out the defendant for the round sum which he paid. In this testimony he is supported by Mr. Mueller as to what took place at the interview. But, unfortunately for this contention, courts of equity are in the habit of giving more effect to the contemporaneous acts and declarations of the parties than to the subsequent testimony of interested witnesses; and this story is utterly incompatible with the story told by the account called Exhibit B. The sum of $1730.87 is not a round sum by any means. If the defendant had simply made the plaintiff an offer to take his interest at a round sum, it is inconceivable that he would have added eighty-seven cents to the round sum. Nor does he explain how it is that this round sum happens exactly to balance the account called Exhibit B, which he exhibited to the plaintiff, and on the faith of which he obtained the plaintiff's assent to the settlement on the terms named.

As the plaintiff did not get what he should have got, equity will compel the defendant to carry out the settlement according to the understanding of the parties, by paying the plaintiff enough to make up what he would have received if the account between them had been properly stated and settled. This was the view taken by the circuit court, and it was the only view which was compatible with good conscience and fair dealing.

Without dwelling at length upon the evidence, we think the circuit court was clearly right in stating the account upon the basis of Exhibit B, which had been exhibited by the defendant to the plaintiff as the basis of their settlement, after including therein the charges and credits which the evidence shows to have been omitted therefrom. We are quite clear, for reasons stated in an opinion given by the learned judge, which is in the

record, that he did right in disregarding another account, called exhibit No. 1, which was produced for the first time by the defendant on the trial, which contained a large number of charges not contained in Exhibit B, which charges were not supported by any vouchers or even by the exhibition, by the defendant, of the books of the concern. Stating the account upon these principles, the defendant is to be charged with the following items :

| | |
|---|---|
| One half of the stock of the Western Bath Tub and Manufacturing Company, transferred to him on the organization of the corporation | $4750.00 |
| One half of the stock of the same corporation, transferred to him by the plaintiff at the so-called settlement of July 15, 1885 | 4750.00 |
| Moneys collected by the defendant, belonging to the plaintiff, while in charge of the finances of the concern prior to July 15, 1885 | 2227.05 |
| | $11,727.05 |

And that he is entitled, on the other hand, to the following credits :

| | |
|---|---|
| Moneys advanced by him to liquidate the debts of the plaintiff prior to July 15, 1885 | $5246.18 |
| Moneys advanced by him to take up the Rumsey notes | 955.57 |
| Moneys advanced by him to take up the Weaver notes | 1752.75 |
| Money and note (the latter afterwards paid) delivered to the plaintiff on July 15, 1885 | 1730.87 |
| | $9685.37 |
| Balance due plaintiff | $2041.68 |

This was the balance for which the court gave judgment. The interest allowed by the court is not complained of, and was proper.

We are asked to give damages in affirming the judgment, but we incline to think that this is not a case where we ought to take that course.

The judgment will be affirmed. It is so ordered. All the judges concur.