Case 94.—ACTION BY HILMAR EHRMANN AGAINST A. P.
STITZEL TO SURCHARGE A SETTLEENT MADE BE-
TWEEN THEM AS LATE PARTNERS.—January 17.

## Ehrmann v. Stitzel.

Appeal from Jefferson Circuit Court, Chancery
Branch, Second Division.

Sam'l B. Kirby, Judge.

From a judgment sustaining a demurrer to plain-
tiff's petition, he appeals.   Reversed.

1. Partnerships—Sale by Retiring Partner—Error in Making Esti-·
   mates—Fraud or Mistake—Writing—Where, in an action to
   correct a settlement of a partnership which was made in
   writing, in which one member sold his interest to the other,
   the petition alleges that the plaintiff having full faith in
   the honesty and integrity of the other partner and of his belief
   that he was a reliable bookkeeper, he suffered him to make
   all the calculations, estimates and statements of accounts,
   and that either by mistake or with fraudulent intent to de-
   ceive plaintiff and induce him to settle with defendant for
   a larger amount than was justly due him, to-wit, the sum of·
   $555.90, for which sum he prays judgment.  Held—That the
   petition states a cause of action against the defendant.
2. Same—Correcting Date of Writing—Parol Evidence—In · an
   action to correct a written settlement of a partnership be-
   tween two partners, in which one of the firm sold his inter-
   est therein to the other and alleging that the settlement
   was made by the mistake or fraud of the defendant, one or
   the other of which is true, parol evidence is admissible to
   prove that the settlement was made on July 31 instead of
   July 1, 1902, the latter date being named in the writing.
3. Surcharging Settlement—In an action to correct errors in a
   settlement of a sale by one member of the firm to the other,
   alleged to have been made by fraud or mistake of the defend-
   ant, who was trusted by the plaintiff to make the calculations
   and estimate the liabilities and profits, in order to arrive at
   the interest of each member, the settlement may be sur-
   charged to the extent that there were errors committed in
   arriving at the amount of the consideration whether as the
   result of fraud or mistake.

Ehrmann v. Stitzel.

O. A. WEHLE and LOUIS B. WEHLE for appellant.

### CLASSIFICATION OF POINTS AND AUTHORITIES.

1. The plaintiff may allege and prove that the partnership settlement was made on July 31, 1902, although the writing which contains the terms of the agreement bears date of July 1st. (Taylor on Evidence, par. 1150; Greenleaf on Evidence, 16 Ed., sec. 285; Miller v. Hampton, 37 Ala., 342; Perrin v. Broadwell, 3 Dana, 596; Aldridge v. Bank of Decatur, 17 Ala., 45; Burns & Co. v. Moore, 76 Ala., 339; Bird v. Munroe, 66 Maine, 337; Battles v. Fobes, 21 Pick., 239; Shaughnessy v. Lewis, 130 Mass., 355; Russell v. C. D. Carr & Co., 38 Ga., 459; School District No. 4 v. Stilley, 36 Ill. App., 133; Davis Sewing Machine Co. v. Stone, 131 Mass., 384; Tribble v. Oldham, 5 J. J. M., 137.)

2. The fact that the settlement of the partnership took the form of a sale does, not in law, preclude the plaintiff from bringing a bill to surcharge the settlement in specific items. (Kraushaar v. Brant, 22 Mo. App., 162; Herty v. Clark, 46 Ga., 649; Trump v. Baltzwell, 3 Md., 295; Heath v. Waters, 40 Mich., 457; Wicliffe v. Mosely, 4 J. J. M., 172; Lee's Adm'r v. Reed, 4 Dana, 109; Barnett v. Barnett, 6 J. J. M., 499; Waggoner v. Winter, 7 J. J. M., 173; Scheuer v. Berringer, 102 Ala., 216; Donahue v. McCosh, 70 Iowa, 733; Gould v. Emerson, 160 Mass., 438; Cobb v. Cole, 51 Minn., 48; Abrahams v. Hunt, 26 Pa., 49; Evans v. Clapp, 123 Mass., 165; Stephens v. Orman, 10 Fla., 9; Turner v. Otis, 30 Kan., 1.)

3. In order for a partner, who has bought out the interest of a retiring partner, to surcharge the settlement on the ground of mutual mistake, or of his own mistake induced by the fraud of his retiring partner, it is sufficient for him to allege and prove facts showing that the defendant had ample means of knowledge and ample ability to arrange the settlement, and that the plaintiff fully trusted the defendant's knowledge, ability, accuracy and honesty. It is not necessary, in addition, to allege and prove facts to establish the plaintiff's diligence. (Story on Partnership, 3 Ed., sec. 169; Lindley on Partnership, 2 Am. Ed., p. 303; Am. & Eng. Ency. of Law, 2 Ed., vol. 22, p. 114; Gum v. Black, 60 Fed. Rep., 151; Renfro v. Pearce, 68 Ill., 125; Pierce v. McClellan, 93 Ill., 245; Filbrun v. Ivers, 92 Mo., 388; Garretson v. Brown, 185 Pa. St., 447; Wells v. McGeoch, 71 Wis., 196; Pomeroy's Equity, sec. 1088; Pomeroy's Equity, secs. 852, 848, 856, 891, 902; Lee's Adm'r v. Reed, 4 Dana, 109.)

MORRIS B. GIFFORD for appellees.

A. E. WILLSON of counsel.

### CLASSIFICATION.

1. Date of written contract of sale and partnership dissolution can not be impeached by parole.

2. An agreement of sale by one partner of his interest to the other partner can not be surcharged. (Am. & Eng. Ency. of Law, vol. 14, p. 115; Slaughter v. Ferson, 13 Wallace, 379; Aetna Insurance Co. v. Reed, 33 Ohio St., 283; Amer. & Eng. Ency. of Law, vol. 20, p. 831; Western German Savings Bank v. Farmers Bank, 73 Ky., 670; Wilson v. Western N. C. Land Co., 77 N. Car., 445.)

3. Equity will not permit the inequality of a continuing partner's action to correct as against the retired partner, alleged errors in a bill of sale, which is part of the dissolution contract.

4. If the right to correct such a settlement exists it can not be by an equitable action to correct the bill of sale, but must be by action on the case for damages.

5. "Vigilantibus non dormintibus aequitas subvenit" applies with unusual force to an attempt by a continuing partner to correct as against a retired partner a settlement made at the time of dissolution.

OPINION BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment of the lower court sustaining a general demurrer to appellant's petition and dismissing the action, which was one in equity to surcharge a partnership accounting made six months and fifteen days before the filing of the petition. It appears from the averments of the petition: That appellant, Hilmar Ehrmann, and appellee, A. P. Stitzel, had been partners for more than a year in the wholesale and retail liquor business in Louisville, and that the partnership was to continue ten years; that appellant had contributed to the partnership capital $30,000, and appellee $10,000, and that the profits and losses of the business were to be divided between the partners in the same proportion. But, notwithstanding the fact that only a short part of the time for which the partnership was to run

vol. 121—48

had expired, the partners on July 31, 1902, agreed on a dissolution thereof upon the following terms: That appellant should take all the assets and assume all the liabilities of the partnership; that appellee, who had been in charge of the books and is a competent bookkeeper, should make an accurate inventory and valuation of the assets and statement of the liabilities of the firm, and that on the basis of such inventory, valuation and statement by appellee, the profits would be ascertained, the balance struck, and the settlement between the partners made; that such inventory, valuation and statement were made by appellee and represented by him to be correct, upon which appellant implicitly relied, and that the statement of appellee showed the profits of the partnership business to be $12,799.20, and appellee's share thereof $3,199.80, which, together with the $10,000 he contributed to the capital of the partnership and was entitled to withdraw, made the amount apparently due him upon the settlement $13,199.80; and upon this basis appellant settled with appellee, by paying $1,199.80 in money and executing to him forty-eight notes, each for $250, all bearing interest from August 1, 1902, the first payable Suptember 1, 1902, and the last August 1, 1906; that the partners signed a written agreement, which sets forth the dissolution of the partnership, conveys to appellant all the interest of appellee in the partnership assets, and recites the consideration thereof. This writing was filed with and made a part of the petition, and, though signed by the parties July 31, it was dated July 1, 1902; but all the calculations and estimates of appellee constituting the basis of the settlement and dissolution of the partnership, as well as appellant's purchase of appellee's interest in the partner-

ship-property and assets, were brought down to and valued as of August 1, 1902. The petition also particularly sets forth a great many specific errors committed by appellee in making the inventory, valuation and statement of account entrusted to him, such as inventorying thirty-five, instead of thirty, barrels of whisky, underestimating the storage and insurance charges on whisky in bond; the amount due from the firm to the city creditors, and the amount of expenses incurred, but not due, which appellant was to assume and pay. All the errors complained of are fully set forth in a written statement exhibited with, and made a part of, the petition. According to this statement, and the averment of the petition, the errors in question amount in the aggregate to $2,223.60, and by reason thereof appellant, upon the dissolution of the partnership, settled with appellee for $555.90 more than he was entitled to receive under the agreement between them. The petition contains in substance the further averments that appellee was permitted by appellant to make out the statement constituting the basis of the dissolution of the partnership and the latter's purchase of his interest in the property and assets thereof because of his belief that he was a reliable bookkeeper and honest man; that he accepted appellee's work, relying upon his honesty, good faith and accuracy; that the wrongful entries, misstatements and misrepresentations of appellee in the estimates, calculations and statement of account furnished by him as a basis for the settlement of the partnership were made either by mistake or with the fraudulent intention of deceiving appellant and making him settle with appellee for a larger amount than was justly due him; and that one or the other of these facts is true, but appellant does not know

which of them is true. The prayer of the petition asks that the settlement of the partnership be corrected, and appellee be ordered to surrender enough of the settlement notes to equal the errors in the settlement, or that one of them be surrendered and another credited with the remainder, and, if appellee has sold the notes, then for personal judgment against him for $555.90, and for all general and proper relief. It also appears from the allegations of the petition that appellee, after receiving of appellant the several notes executed in settlement of his (appellee's) interest in the partnership property and assets, assigned them tô his father, Philip Stitzel, who was joined as a defendant in the action; but, the latter having died after the institution of the action, the same was revived against his widow as administratrix of his estate.

It is contended for appellee that the petition is bad on demurrer, because (1) it seeks by parol evidence to show that the settlement and dissolution of the partnership between appellant and appellee, as well as the purchase by the former of the latter's interest in the partnership property, occurred July 31, instead of July 1, 1902, as shown by the date of the writing signed by the parties; (2) that it seeks to recover $555.90 on account of errors in the partnership settlement, whereas the written agreement shows a contract of sale of all appellee's interest in the partnership assets of $13,199.80; (3) that the petition is fatally defective, in that it does not allege that appellant had exercised a due surveillance over appellee in his work of making the inventory and statement for the partnership settlement.

As to the first contention, it is sufficient to say that ordinarily the true date of every paper is the time

of its delivery, and this may, even as between the parties themselves, be shown by parol evidence, although a different date be upon the paper. Indeed, this is the rule, unless there are in the document itself provisions that refer to its date as material and show it to be essential to the rights of the parties. The writing in the case at bar contains no provision that refers to its date as material, or makes it so. On the contrary, it indicates August 1, 1902, as a more important date than July 1, 1902, for by its terms the notes executed by appellant to appellee are to bear interest from August 1, 1902, instead of from July 1, 1902, the date of the writing. But, as only one transaction is involved, it is for the purpose of the action immaterial when that transaction occurred. The view of the law above expressed is supported by the following authorities: Taylor on Evidence, section 1150; Perrin v. Broadwell, 3 Dana, 596; Miller v. Hampton, 37 Ala., 342; Aldridge v. Bank of Decatur, 17 Ala., 45; Burns & Co. v. Moore, 76 Ala., 339, 52 Am. Rep., 332; Battles v. Fobes, 21 Pick., 239; Shaughnessey v. Lewis, 130 Mass., 355; Russell v. Carr & Co., 38 Ga., 459.

The second contention of counsel for appellee is bottomed upon the theory that the transaction between appellant and appellee was a purchase by the former of the latter's interest in the partnership property and effects. Therefore there can be no surcharging of the settlement made between them as in a case of mere accounting, but appellant's remedy is by an action for damages. We are, however, unable to adopt this view of the matter. While the instrument of writing between the parties expresses a sale, as well as conveyance of appellee's interest in the property and business of the firm, it is not a naked

sale, such as would have resulted if one partner, acting upon his own judgment and from his personal knowledge of the property and business of the firm, had paid the other a round sum for his interest. In such a sale each partner would simply have had an eye to his own advantage in the legal and commercial sense in which sales are usually made, when men deal with each other at arm's length, with no other advantage than that which results from superiority of judgment and skill in trading. But the transaction between appellant and appellee was not in this class or of this kind. According to the averments of the petition, appellant was not familiar with the business in which he and appellee were engaged, but appellee was. Appellant, desiring to become the exclusive owner of the business in which he and appellee were partners, was willing to pay for the latter's interest therein, but unwilling to risk his own judgment by paying a round sum therefor. So, having full confidence in appellee's knowledge of the business, his skill as a bookkeeper, and integrity as a man, and desiring to pay him all that his interest in the partnership business would amount to, it was agreed by him that appellee should accurately value the property of the partnership, and estimate its liabilities and profits, in order to arrive at the value of his interest therein. This work appellee undertook to do, and professed to have done. The dissolution of the partnership and sale of his interest to appellant resulted from the accounting thus made, and the consideration therefor was the actual balance reported by appellee to be due him upon such accounting and settlement, and it is in respect to this balance appellant charges fraud or mistake. That the value of appellee's interest in the partnership was thus ascertained is

shown by the fact that the amount found to be due him was not expressed in a round sum, as would have been the case if the sale had been made in the usual way.

The case of Kraushaar v. Brant, 22 Mo. App., 162, in point of fact is strikingly like the one at bar. The entire capital stock of a business corporation was owned by two persons. One agreed to purchase of the other his shares of the stock at their par value, and to pay therefor such a sum as should be found due the seller upon an accounting. The purchaser by fraud or mistake, by presenting to the seller a false statement of account, induced him to sell for a less amount than was due him. The itemized account constituting the basis of settlement contained at its close these words: "By amount due C. F. Kraushaar in full settlement of his account and purchase of his entire one-half interest in said Western Bath Tub Manufacturing Company, $1,730.87." Suit was brought in equity by the defrauded party for an accounting and cancellation of certain notes executed in the transaction complained of. The defense interposed was that there was only a contract of sale of shares of stock in the corporation, which might be rescinded on account of fraud or mistake in arriving at the consideration, but that the settlement manifesting the amount of the consideration could not be surcharged. In the opinion (delivered by Seymour D. Thompson, Judge), it is said: "If the plaintiff were asking merely for a recission of the contract, he would be bound to tender back what he had received under the contract. But a court of equity may vary its relief to suit the exigencies of each particular case. It is very plain here that what the parties intended to do was to settle the matters of account be-

tween them, in respect of this corporation upon the
basis of the defendant getting credit for the advances
which he had made on account of the plaintiff and
taking the plaintiff's shares of stock in the concern
at its par value.  That, we have no doubt, is what
the defendant led the plaintiff to believe that he was
giving him, and what the plaintiff supposed he was
getting.  The defendant strenuously denies this, and
claims that nothing was said about the value at which
the plaintiff should transfer his shares to the defend-
ant, but that he simply offered to buy out the defend-
ant for the named sum, which he paid.  In this testi-
mony he is supported by Mr. Mueller as to what took
place at the interview.  But, unfortunately for his
contention, courts of equity are in the habit of giving
more effect to the contemporaneous acts and declara-
tions of the parties than to the subsequent testimony
of interested witnesses; and this story is utterly in-
compatible with the story told by the account called
'Exhibit B.'  The sum of $1,730.87 is not a round
sum by any means.  If the defendant had simply
made the plaintiff an offer to take his interest at a
round sum, it is inconceivable that he would have
added 87 cents to the round sum.  Nor does he (the
defendant) explain how it is that this round sum hap-
pens exactly to balance the account, called 'Exhibit
B,' which he exhibited to the plaintiff, and on  the
faith of which he obtained the plaintiff's consent to
the settlement on the terms named.  As the plaintiff
did not get what he should have got, equity will com-
pel the defendant to carry out the settlement accord-
ing to the understanding of the parties, by paying
plaintiff enough to make up what he would have re-
ceived if the account between them had been proper-
ly stated and settled.''

Other cases on this question, cited by counsel, are Herty v. Clark, 46 Ga., 649; Trump v. Baltzell, 3 Md., 295; Heath v. Waters, 40 Mich., 457. And an examination of them will show that they are in accord with the doctrine expressed in Kraushaar v. Brant, supra. From the foregoing cases we reach the conclusion that where there is a sale to one partner of a retiring partner's interest in the firm's property and business, made in the course of a settlement after a full accounting, the consideration for such sale, being the balance resulting from the accounting, may be surcharged to the extent that there were errors committed in arriving at the amount of the consideration, whether as the result of fraud or mistake.

We are not without authority in our own State with respect to surcharging a balance erroneously accepted by partners in a settlement, preparatory to or in pursuance of partnership dissolution; the error being due to mutual mistake of the parties, or to a mistake of the party wronged by the act of the other. In Lee's Adm'rs v. Reed, 4 Dana, 109, it is said: "A settlement concluded between parties, each of whom may be presumed to be acquainted with the transactions involved, is entitled to great consideration, as furnishing high evidence of the correctness of its results. But it loses much of its authority when it appears that the matters brought into account rest exclusively, or principally, within the knowledge of one of the parties, and are received and admitted by the other upon his representations. In the first case, however, the settlement is not deemed so conclusive but that it may be impeached on the ground of fraud or mistake; and in the other it is still held to be sufficient evidence of the truth and fairness of its results until fraud or mistake is established. But as fraud

may be more easily practiced, or mistakes more easily occur, in the latter than in the former case, reason as well as authority indicates that slighter evidence of fraud or mistake will induce the chancellor to open the settlement and look into the accounts in the one case than in the other." (Wickliffe v. Mosely, 4 J. J. Marsh., 172; Barnett v. Barnett, 6 J. J. Marsh., 499; Waggoner v. Minter, 7 J. J. Marsh., 173.)

Appellant's last contention is, we think, untenable, because it disregards that fundamental principle in the law of partnership which requires good faith and mutual trust between the individual members of a partnership. This rule is aptly expressed in Story on Partnership (3rd Ed.) section 169, as follows: "We come in the next place to the consideration of the rights, duties, and obligations of partners between themselves. And here it may be stated that, as the contract itself has its solid foundation in the mutual respect, confidence, and belief in the entire integrity of each partner, and his sincere devotion to the business and true interests of the partnership, good faith and reasonable skill and diligence and the exercise of sound judgment and discretion are naturally, if not necessarily, implied from the very nature and character of the relation of partnership." The same thing is equally well expressed in Lindley on Partnership, page 303: "The utmost good faith is due from every member of a partnership towards every other member; and if any dispute arises between partners touching any transaction by which one seeks to benefit himself at the expense of the firm, he will be required to show, not only that he has law on his side, but that his conduct will bear to be tried by the highest standard of honor. Thus,

if one partner knows more about the state of the partnership than another, and, concealing what he knows, enters into an agreement with that other relative to some matters as to which a knowledge of the state of accounts is material, such agreement will not be allowed to stand. This obligation to perfect fairness and good faith is, moreover, not confined to persons who actually are partners. It extends to persons negotiating for a partnership, but between whom no partnership as yet exists, and also to persons who have dissolved partnership, but who have not completely wound up and settled the partnership affairs; and most especially is good faith required to be observed where one partner is endeavoring to get rid of another, or to buy him out." The necessity for good faith applies in the case of a sale by one partner to another of his partnership interest, and such sale will be sustained only when it is made for a fair consideration and upon full disclosure of all important information as to value. The rule applies, even after dissolution, where partnership affairs have not been completely wound up and settled." (22 Am. & Eng. Ency. of Law [2d Ed.], page 105.) The same general doctrine is announced in Pomeroy's Equity, sections 848, 852, 856, 1088.

In transactions between partners, concealment becomes fraudulent when it is the duty of the party having knowledge of the facts to disclose them to the other, and obviously an intentional misrepresentation of the facts by one partner to the other would be a greater fraud than mere concealment. (Pom. Eq. Juris., sections 891, 902.) In Lee's Adm'r v. Reed, 4 Dana, 109, 117, this court announces the readiness of a court of equity to afford relief to the injured party against fraud or mistake in a settlement practiced by one in whom the other justifiably

reposed confidence: ''Whether Murrell, who must have known all the facts, had forgotten them, or whether his omission to mention them resulted from a desire to evade his liabilities altogether, or from an anxiety, increased, doubtless, by that of his co-obligors and sureties, to obtain as large a credit as possible upon the note, leaving other matters to be settled as they might be, in future, it is not necessary to inquire. If he had forgotten them, their omission from the settlement was the consequence of mutual ignorance and mistake. If he failed to mention them designedly, either for the purpose above supposed, or because he thought it belonged to the other side to know and bring them forward, their omission is attributable to ignorance on the one side, or to an improper, if not an inexcusable, suppression of the truth on the other; and in either case the party thus injured by mistake or fraud is entitled to relief in equity, by introducing the omitted items, with the same effect as if they had not been omitted.''

The facts set forth in the petition, and admitted by the demurrer, manifest specific errors in an accounting, made by the fraud or mistake of a retiring partner, in whose integrity as a man, superior knowledge of the partnership business, and skill as a bookkeeper appellant reposed implicit confidence, and that the errors committed were to the advantage of the retiring partner and the serious loss and injury of appellant. There is, in our opinion, therefore, no reason for denying the latter the relief asked, if the facts alleged be sustained by sufficient proof. It follows, therefore, that the chancellor erred in sustaining the demurrer.

Wherefore, the judgment is reversed, and cause remanded for further proceedings consistent with the opinion.