171 So. 375

## SMITH v. ROSSON.

### 1 Div. 916.

Supreme Court of Alabama.

Dec. 17, 1936.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellant.

 

Wm. B. & C. C. Inge, of Mobile, for appellee.

BOULDIN, Justice.

Bill in equity to reopen a settlement of partnership business on dissolution of the firm, and specially to surcharge certain items.

There was decree for complainant, and respondent appeals.

Briefly, the case charged in the bill is this:

For several years prior to May 1, 1929, complainant, George T. Rosson, and respondent, Walter K. Smith, certified public accountants, were engaged in a general auditing and income tax business under the firm name of Rosson & Smith. They were equal partners. On May 1, 1929, the firm was dissolved by mutual agreement, and complainant, by agreement in writing, in consideration of the sum of $10,025.91, sold and transferred all his interest in said partnership and its assets to respondent, who assumed the liabilities and obligations of the firm.

In July, 1926, complainant had suffered a stroke of paralysis which disabled him ever after to actively engage in the business. The management was thereafter in the hands of respondent, who had full knowledge of the condition of the business, while complainant did not.

Looking to a dissolution of the partnership and a settlement of the partnership business as one transaction, respondent furnished a written statement or memorandum in three parts, designated as a "Balance Sheet," an "Income Statement," and a "Trial Balance." The "Balance Sheet," or summary, was as follows:

Balance Sheet

| Assets | | |
|---|---|---|
| Cash | $ 5,770.27 | |
| Accounts receivable | 12,654.00 | |
| Office equipment | 816.51 | |
| | | $19,240.78 |

| Liabilities | | |
|---|---|---|
| Accounts payable | 50.00 | |
| Capital accounts | | |
| Geo. T. Rosson | 10,025.91 | |
| Walter K. Smith | 9,164.87 | |
| | | $19,240.78 |

This statement, so the bill avers, became the basis of the settlement; the amount paid was the exact sum thus shown to be the interest of complainant in the firm business.

It is then charged that the statement furnished "did not correctly set forth the business of the partnership, in that it omitted a number of accounts receivable when all the work to be done had been done, aggregating approximately $7,000.00, and omitted pending business where all or the greater portion of the work had been done, aggregating approximately $10,450.00, a list of which accounts where all or the greater portion of the work had been done at the time of dissolution is hereto attached, marked 'Exhibit C,' and made a part hereof the same as if copied herein."

Exhibit B sets forth fees alleged to have been collected by respondent since

May 1, 1929, earned or largely earned before dissolution. It lists 9 items, naming the several clients and amounts, aggregating $17,450.

The bill charges fraud and unfairness in failing to truly disclose the business and assets of the firm in the statement furnished, or otherwise; then alleges that due to his sickness and disability the facts had not been discovered until the latter part of 1932 and first part of 1933. The bill was filed November 3, 1933. The bill prayed for an accounting, for such accounts and pending business as were omitted from the settlement, and for general relief.

Briefly the answer alleged the following:

Complainant had become afflicted and physically incapacitated for work as alleged, but was able to visit the office from time to time and discuss the general course of business, etc.

The statement furnished looking to a dissolution and settlement of partnership affairs was a true and correct one as appeared from the books. From the beginning, and with knowledge of both partners, fees accruing were not entered on the books until the work was done, the amount of the charge fixed by agreement, or, in the absence of agreement, at such sum as the firm deemed reasonable. Whereupon, a bill for same was rendered.

Complainant knew of pending business not shown on the statement or books.

Neither party treated the statement as fully reflecting the condition of the business.

It is further alleged that complainant advised respondent that he was placing his interest in the hands of Gregory L. Smith, as his attorney; that Gregory L. Smith did represent complainant; that in the negotiations several things were considered. Among them, the amount of questionable receivables included in the assets listed in the statements furnished; the burden and cost of fulfilling the obligations of the firm in following up and rechecking income tax returns with internal revenue agents for which the firm had already been paid, and no extra charge was to be made, unless the case reached the Bureau in Washington or the courts; that the question of fees to accrue in pending business was gone over; that the uncollectable assets were uncertain; that the future free services in rechecking income tax returns was known to involve much labor and time, but the amount and value thereof were entirely unascertainable; that, likewise, the fees to be realized in pending business were contingent and uncertain; that respondent made full and fair disclosure of these matters, and after full consideration, the balance shown by the books was taken as the lump-sum consideration for the sale of all interest of complainant in the firm business.

The answer, in response to interrogatories, set forth the contention of respondent as to the several items in Exhibit B to the bill; all of these, save one, were fees collected in cases pending before the Board of Tax Appeals at Washington at the date of dissolution.

Gregory L. Smith died before the suit was brought. Complainant died in the same month the suit was filed, and the cause proceeded in the name of his executrix.

The trial court, in his final decree, recites:

"The respondent's testimony admits the omission from its balance sheet of the following items of business, viz., Anticich $1145.00, F. L. Roche $977.75, Standard Lumber Company $293.75, J. W. McWilliams $3862.79, J. J. Blacksher $750.00, H. C. Lister $237.50 (this item includes $50.00 prepayment), Mobile Register $443.75 (this includes $75.00 prepayment by Mobile Register), J. B. Dortch $4305.51 (this includes $50.00 prepayment by Dortch), Mobile Shipbuilding Company $1323.49, Paper Mill Fund $30.00, Ramsay-McCormack $3000.00, and complainant avers and charges that respondent by such omission on his part has thereby taken undue advantage in accomplishing his original settlement.

"The Court has given a most careful consideration and study of the relevant evidence in this case, the irrelevant evidence being disregarded, and it is of the opinion that the bill has equity and complainant is entitled to relief under the evidence in this case. The Court allows the sale to stand and orders complainant to surcharge the original account, the basis of sale with the total items omitted, viz., $16,369.54, and judgment or decree for one-half of the net fees, viz., $9,710.88, being principal and interest, be recovered by complainant."

Decree was rendered accordingly.

■■ Partners stand in confidential relations in all matters pertaining to the partnership business. This relation imposed on each the obligation of entire good faith in disclosing facts known to the one and not the other. As a corollary, the one may, without being chargeable with a want of diligence, fully accept the statements of the other in their dealings.

■ Where one, because of physical disability, is wholly incapacitated to participate in the conduct of the business, the active partner, in full charge, with full knowledge of the partnership affairs, or with data easily available to ascertain same, when undertaking to furnish information touching the condition of the business, looking to a dissolution and settlement of the partnership, has a special obligation to make a full, fair showing, growing out of the known disadvantage under which the disabled partner must act.

■■ A court of equity has full jurisdiction to reopen a settlement of partnership business for fraud or mistake. If fraud permeates the entire settlement, it may be entirely set aside, and a new settlement had in equity. But if the settlement is correct in part, and may be righted by surcharging certain items, pro or con, such relief may be granted. All this is to say the court of equity may so mold its decree as to do equity in the particular case.

■ That the settlement takes the form of or is consummated by a sale of one partner's entire interest to the other for a fixed sum neither defeats the right to such relief, nor alters the principles upon which it is granted. It does not involve the making of a new and different contract from that made by the parties, so that the only proper remedy is by rescission, and placing the parties in statu quo.

■ As for a dissolution of the partnership and the passing of a going business from one to the other, the contract has become fully executed; the parties cannot be put back in statu quo as of the date of the settlement. Such an accounting as will do equity in the settlement of the partnership affairs is a well-recognized remedy. Paulling v. Creagh's Administrators, 54 Ala. 646; Lake v. Sealy et al., 231 Ala. 466, 165 So. 399; Van Heuvel v. Roberts, 221 Ala. 83, 127 So. 506; Hallman v. Brock, 204 Ala. 17, 85 So. 280; Scheuer v. Berringer, 102 Ala. 216, 14 So. 640; Burks v. Parker, 192 Ala. 250, 68 So. 271; Enslen et al. v. Allen, 160 Ala. 529, 49 So. 430; Peters Mineral Land Co. v. Hooper et al., 208 Ala. 324, 94 So. 606; Saunders v. McDonough et al., 191 Ala. 119, 67 So. 591; 47 C.J. 1187, 1188; Crowson v. Cody et al., 207 Ala. 476, 93 So. 420; Brooks v. Martin, 2 Wall. 70–87, 17 L.Ed. 732; Ehrmann v. Stitzel, 121 Ky. 751, 90 S.W. 275, 123 Am.St.Rep. 224; Kraushaar v. Brant, 22 Mo.App. 162; 1 Story, Equity, § 523; Lindley on Partnership, p. 303.

We have given full and careful consideration of the record with the aid of carefully prepared briefs on both sides, including reply and supplemental briefs.

■ The cause was tried on depositions, not on testimony given orally before the trial judge, and is to be reviewed under our statute without presumption in favor of the conclusions of the trial court.

Much is said in the bill and answer, in the testimony, and in argument, touching experience and standing of the members of the firm in their profession, their contributions to the business, and income of the firm through their respective specialties, one as a general accountant and the other as an expert in income and special tax returns.

Reference is also made to the fact that during the extended illness of complainant the respondent continued to divide the income on an equal basis.

■ None of these matters, we are convinced, were considered as a basis, or an element, on which the settlement should be made. A controversy of that sort, as affecting the interests of each at the date of dissolution, would likely have rendered an agreed settlement impossible. Neither party would brook a claim of vantage by the other on such ground. Whatever the notions of either partner on these lines, the settlement proceeded on the basis of equal interests in the business at the time. Whatever ground for a feeling on respondent's part that he had carried an unequal burden to that time, this would not warrant any concealment of the present state of the business with a view to evening up past inequalities. Any restatement of the account should be upon the basis agreed upon at the time of dissolution, a basis of equality of interest at that date.

Respondent first approached complainant with a suggestion that respondent be allowed a salary before dividing the in-

come. No just complaint can be laid to respondent for this move under the admitted facts.

After reflection complainant concluded the better course would be a dissolution of the firm and settlement of the business inter se.

Gregory L. Smith, an eminent lawyer of unquestioned learning, wisdom, and experience in business affairs, as well as fidelity to all the obligations between attorney and client, was called in to aid in making the settlement. In course of negotiations, he advised that it were better to make a complete settlement at the time. He drew the agreement exhibited to the bill.

The parties differ as to Gregory L. Smith's relation to the settlement. Appellant insists he was attorney for complainant. Appellee insists that he was attorney for the firm, was advising both, and taking no sides. He had been the regular retained attorney of the firm for some years to and including 1928. No special retainer had been paid for 1929; neither had there been any express discontinuance of the relation of attorney and client. So far as appears neither of the partners, nor the firm, ever paid a fee for this service. It does not appear whether one was ever rendered. That he was first called in by complainant seems clear enough. While, at that time, complainant's mind, as theretofore, was reasonably clear, he was paralyzed on one side, getting about only with the aid of an attendant, so feeble that his physician had long advised against any business activity, physical or mental. This situation was fully known and respected by respondent and the office force when complainant called at the office.

■ We conclude Gregory L. Smith was called upon as regular counsel for the firm to aid in a friendly and just settlement between the partners. But, with a clear concept of the obligations arising out of the disability of complainant, and the unwisdom of agitating his mind with details, Gregory L. Smith would, and no doubt did, place himself in the position of complainant in calling for the information essential to the giving of proper advice. In so doing he was under no duty to go personally into account books, files, court proceedings, and the like. Knowing quite well the obligation of respondent to make a full and fair disclosure of the state of the business under existing conditions, he very properly looked to respondent so to do, and was under no duty to assume an attitude of mistrust, the partisan attitude of the attorney on one side of a lawsuit.

Our conclusion on this matter is that respondent had the same obligation to make a full and fair disclosure of the condition of the partnership business to Gregory L. Smith as the complainant. We further opine that if such disclosure was made, a just settlement was made so far as could then be reasonably discerned.

■ The defense of laches is not made out. In complainant's physical and mental condition no great activity was to be expected in ascertaining all the facts upon learning one or more which would provoke inquiry. The evidence supports the allegations of the bill that a discovery of fraud, if any, was late in 1932, with fuller information later. Efforts of complainant's present counsel to negotiate a further settlement caused some delay.

■ Coming to the merits of the case, we are convinced that the written statement of assets and liabilities prepared by respondent, made exhibit to the bill, did not constitute the sole basis of negotiation and settlement between the parties. It did reflect what was shown on the books, and was a very material element.

True, the cash paid for complainant's interest was the amount shown on the balance sheet as his share of the assets as per the books taken at full value. But this statement on its face shows matter not appearing on the books. It shows respondent had checked over the receivables, made an estimate of those probably not collectable, and entered an item "slow and doubtful $2,197.87." It appears in proof that of these $1,758.95 proved uncollectable.

Another feature of this exhibit was a statement of the income for the entire year 1928, the portion thereof received to April 30, 1928, and the received portion thereafter. Thus was brought into the negotiations, as we view the entire record, a consideration of the fees from income tax business accruing in the first part of the year as compared with the entire year while overhead expenses continued. The accuracy of this statement, and what effect, if any, it was given in the settlement, does not appear.

Without dispute the firm was under obligation to income tax clients to follow up

the returns when income tax agents called for further information, a rechecking, or question the correctness of the return on any matter of taxable income or allowable deductions. This service was to be rendered without additional charge. It was an obligation assumed by respondent for which the firm had already been paid.

In the nature of the case, the extent of such service was uncertain, could only be estimated, was not matter for book entries. The evidence is much at variance as to the quantum of time and labor actually given to these matters. This rechecking by tax authorities covered the returns for three years, some 800 returns. The fees received for income tax work (probably including special taxes) in the years 1927, 1928, and 1929 aggregated $52,944.82, as per Exhibit 1 to testimony of Mr. Grimmer, which is unquestioned.

In the absence of notice that any question on this line would ever arise, no blame can be attached to respondent's failure to keep a record of the time actually employed in this service during the succeeding years. It can never be ascertained with certainty. Nevertheless, we are convinced quite a substantial burden was assumed and performed on this line. This was known to all parties when the settlement was made. To say it was not a consideration entering into the settlement is to say no just settlement was in contemplation. We accept the respondent's evidence that this was a matter of negotiation, an element entering into the settlement as finally made.

We are equally convinced that the matter of partially earned fees in pending business, which would pass to respondent upon the contemplated settlement, was under consideration in the negotiations. This was the sole consideration on which respondent assumed the probable loss on receivables which he paid for at their face value, and further assumed the burden of follow-up work we have discussed. All parties knew in a general way there were partially accrued fees in pending business. Respondent alone was in close touch with these items of business, in position with reasonable effort to make an approximate appraisal of their value. The vital inquiry of this case is whether he intentionally, or through lack of appreciation of his obligations to make a full disclosure of these matters, failed so to do, and thereby induced a settlement which proved to be unfair to his partner.

It is shown that it was the course of business not to enter upon the firm books any such fees until the work was done and the fee ascertained. This was known to and concurred in by complainant while active in the office. But it was the state of the business, not merely what appeared on the books, that was the subject of inquiry. Respondent was fully aware of this.

One of the items involved is not to be classed as pending business. This was the case of Mobile Shipbuilding Company. This fee, $2,000, had accrued many years before, and had been proven in bankruptcy to await such dividend as might accrue. Some three years after the dissolution a dividend of $1,557.05 was collected by respondent. After deducting $233.56 attorney's fees, respondent received $1,323.49 net. We take it that this was overlooked as stated by respondent. What the prospect was in 1929 does not clearly appear. Lack of activity in working up a true showing of assets at that time is about the only implication from this. Being omitted by mistake, if the account was reopened upon grounds alleged in the bill, this item was properly included in restating a correct account.

The Blacksher fee, $750, was for preparing a federal estate tax return. This return was not actually prepared until after dissolution. Preparatory data had been compiled. Just what proportion had accrued at the time of dissolution is far from clear.

All the other items listed in the court's decree above were fees collected in cases pending before the Board of Tax Appeals at Washington.

The firm had a regular attorney employed in Washington, paid by them for time engaged in each case. The firm, with the aid of their attorney, prepared and handled such cases. No fee was fixed in advance in any of these cases. The amount of same was determined largely by the result.

The items listed in the trial court's decree were net collections, after paying attorneys' fees, in all except the case of Ramsay-McCormack, which had not been fully adjusted between respondent and client when the evidence was taken. We see no reason to hold the court placed too high a value on this item.

Much stress is laid in testimony and argument on the fact that these fees were not fixed in amount, and were not fully earned at the time of dissolution.

On this point we must say there was manifestly pending before the Board of Tax Appeals a rather unusual number of important cases. The fees subsequently collected for services therein ran well up toward the current yearly income in tax matters.

The J. W. McWilliams case had been actually decided by the Board of Tax Appeals some two months before dissolution. The decision was under rule 50 of that tribunal, wherein the court decides all the controlling principles in the case and leaves the parties to figure out the result, whereupon the final judgment is entered. If there be disagreement between the parties in arriving at the correct figures, provision is made for hearing and settlement by the board. Respondent was fully informed of the decision, was figuring on the result under the decision, when this dissolution was made. Within two weeks he took a trip to Washington, and with the aid of his attorney, got an agreement with the Government representatives, and within about two months after dissolution collected a fee of $5,000 in that case, or $3,862.79, net, after paying counsel fees. We cannot escape the conclusion that respondent knew or fully believed a large fee was virtually earned in that case when the dissolution was made.

Respondent's testimony by no means discloses the giving of any information to complainant or Gregory L. Smith as to these facts. Indeed, quite unfortunately, his answer to interrogatories asserted this McWilliams case was decided in May following the dissolution, and on examination as a witness was still of the same impression until confronted with the true date. The dates of decisions given in other cases impress us that the decision meant, or very properly led to the impression that it meant, the regular decision and opinion handed down by the Board of Tax Appeals.

In all the other tax appeal cases, save that of Ramsay-McCormack, hearings had been concluded, and the cases submitted for decisions, prior to the dissolution.

Without further prolonging an already long-drawn discussion, we have reached the conclusion, on a very careful study of the record, that there was not a full and fair disclosure such as the particular obligations growing out of the situation of the parties demanded.

Respondent incorporated contingent matter to his interest in the written statement furnished. He was under like duty to give appropriate information in some form touching the assets complainant was passing to him. Parties dealing at arm's length, each fully informed of his own interest, with no fiduciary relations imposing an obligation of utmost fidelity, a regard for the interest of his associate like unto his own, are in far different positions in equity than parties circumstanced as in this case. We, therefore, affirm the decision of the trial court reopening and surcharging the account. But we cannot approve the statement of account, nor the result. In no view of the case, it appears to us, can the decree rendered for $9,710.88 be sustained.

No reference was had. The excerpt from the decree above quoted is all that appears touching the court's method of arriving at said sum.

So far as appears from the record, no credit was allowed for the receivables taken by respondent at full value which proved worthless. Quite a discussion has been presented on this matter in numerous briefs on both sides. Suffice to say, if appellee be correct in presenting figures indicating a credit was allowed for one-half this loss, aggregating $1,758.95, no allowance was made for interest for about six years, during which respondent has been out of the use of his money, while interest was charged against him on fees subsequently collected.

Again the decree finds prepayments made on these items listed in his decree aggregating $175 for which no deduction is made.

Again no deduction was made for all the follow-up work done by respondent on tax returns as above discussed.

Finally, no deduction was made for the unearned portion of these fees in pending cases at the time of dissolution. To charge them up in full was inequitable.

True, the state of the record is such that it is quite difficult to say what is equitable on the last two classes of deductions.

We have considered the question of remanding the cause for a reference. But we are impressed the litigation should be ended here.

The record is quite voluminous and the parties presented such evidence as to them seemed proper.

We are mindful that the parties at the time were dealing with matters quite contingent and uncertain, and any similar uncertainty now must be dealt with by the court with the best lights obtainable to the end that equity be done so far as humanly possible.

We conclude respondent should be allowed a deduction for follow-up work equal to 7½ per cent. of the fees collected in income tax cases for the years 1927, 1928, and 1929, viz., $3,970.80. For an unearned portion of the fees in tax cases, including the Blacksher and Ramsay-McCormack cases equal to 12½ per cent. of the fees realized in such cases, viz., $1,880.60. Respondent is, thereupon, allowed deductions as follows:

Receivables uncollected ........$ 1,758.95
Prepayments on pending fees.... 175.00
Follow-up work on tax returns.. 3,970.80
Unearned portion of fees in pend-
    ing cases ............... 1,880.60

Total deductions ..........$ 7,785.35
Fees collected in pending busi-
    ness, etc. ....................$16,369.54
Less deductions ............... 7,785.35

Balance ...................$ 8,584.19
Charge respondent with one-half
    such balance ................$ 4,292.09
With interest thereon to date of
    the decree in this court.... 804.72

Decree in favor of complain-
    ant for ................$ 5,096.81

In considering the interest item, we observe the receipts and deductions had been accruing concurrently to the time of filing the bill. We conclude interest figured as on a mutual account maturing as of the date of bill filed at the present lawful rate is as nearly equitable as can be determined.

The decree is modified and a final decree here rendered in favor of the complainant for the sum of $5,096.81, of date December 17, 1936.

Let the costs of appeal be taxed, one-half to appellant and one-half to appellee.

Modified and affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.