BROADHEAD *v.* KENNEDY.

Jan. 25, 1954

No. 38779          50 Adv. S. 11          69 So. 2d 831

*Snow & Covington,* Meridian, for appellant.

670

*M. V. B. Miller, Gerald Adams, Gillespie, Huff & Williams,* Meridian, for appellee.

ROBERDS, P. J.

This litigation is between two former business partners. A short summary of the undisputed facts will aid in an understanding of the issues.

Both parties in 1946 were men of extensive experience in the timber and sawmill business. On March 12, 1946, they entered into a partnership arrangement for the ownership and operation of a sawmill and the purchase of timber and sale of lumber at Waynesboro, Mississippi, under the name of Kennedy Lumber Company. The articles of partnership were prepared in writing but were never signed by the parties. However, they operated in substantial compliance therewith. Broadhead was to furnish the capital and Kennedy to furnish his services and experience. Broadhead did put into the business cash or its equivalent of $44,000. The profits were to be divided equally between them.

They entered upon the business at Waynesboro, but in June, 1946, they took in one Odom as a third partner. The subsequent December Odom withdrew from the partnership and disappears from this litigation except as a witness.

In March 1947 Broadhead purchased from one Higginson a sawmill and equipment located at what is called the Switch, a short distance from the sawmill of the parties hereto. In March 1948 Broadhead sold to the Kennedy Lumber Company a quantity of pine lumber which was then located upon the Higginson mill yards at Switch. The price Kennedy Lumber Company was to pay for said lumber was $60,000. On March 12, 1948, Broadhead sold the Switch plant to Clark.

On or about March 13, 1949, Kennedy ceased to work for Kennedy Lumber Company and on that day he was employed by Broadhead at a salary of $500 per month. He left Waynesboro and attended to his duties at Meridian, Quitman and perhaps other places as an employee of Broadhead. On December 6, 1949, Broadhead filed a suit in the chancery court of Wayne County, Mississippi, to dissolve the partnership of Kennedy Lumber Company.

Following the institution of this suit the parties negotiated with each other with the object of agreeing upon a dissolution of the partnership. A dissolution agreement, dated January 16, 1950, was prepared by an attorney and, pursuant to a provision of that agreement, Kennedy executed a deed of trust conveying all of his right, title and interest, with some exceptions, in and to all of the property, real and personal, to a trustee for benefit of the creditors of Kennedy Lumber Company. These instruments were executed by the parties under date of April 12, 1950. Broadhead dismissed the Wayne County suit. The dissolution agreement provided for the appointment of auditors to state an account of the business and the respective interests of the partners therein. The auditors were engaged. On June 1, 1950, they made their report, sending to each partner a copy thereof. Discussions were had between the partners as to their respective rights but no further agreement was reached between them. On July 31, 1950, Broadhead requested the

Trustee to foreclose the deed of trust. On August 25, 1950, the mortgaged property was sold by the trustee, pursuant to the terms of the deed of trust, at which sale the property was purchased by Broadhead for $23,000. The trustee, on August 25, 1950, executed his deed to Broadhead for the property sold, but that trust deed was not recorded until October 23, 1951. On November 12, 1951, Broadhead filed the present suit. In 1952 the employment connection between Kennedy and Broadhead was terminated. The foregoing facts, as above stated, appear to be undisputed.

In his bill in this cause Broadhead alleged the execution of the dissolution agreement and of the deed of trust by Kennedy and that the audit was made pursuant to said agreement; that the property was duly sold under the trust deed and purchased by Broadhead for the sum of $23,000. He alleged payment of the expenses of the sale and that he had paid out $6,716.91 to other creditors and that the partnership remained indebted to him in the sum of $25,288.75, of which amount Kennedy personally owed him $12,644.37, and that in addition Kennedy owed him $19.07 which represented withdrawals by Kennedy from the partnership in excess of withdrawals by Broadhead. He further alleged that Kennedy was making the claim that he had an interest in the property which was sold under the deed of trust and purchased by Broadhead. He prayed that any and all claims of Kennedy to said property be cancelled and that the court enter a personal decree in his favor against Kennedy in the sum of $12,663.44. Copies of the dissolution agreement and of the trust deed and of the audit were all made exhibits to the bill. It is now necessary to set out in some detail the contents of these instruments and of the audit. The dissolution agreement recited that its object was to settle and compose all differences between the parties. It stipulated that the books of the partnership were correct and should be taken as conclusive in determining the

interest of the partners except as to four specified items. It recited the parties were employing Ward, Rea & Shaw of Meridian to make an audit of the books showing the amount due each creditor of the partnership, the account of each partner with the partnership and a reconciliation of the bank balance with the partnership books. It gave the auditors authority to verify the book entries and it was agreed that the audit should be binding upon both parties, the intention being to release each partner from any partnership liability except as might be determined by the audit. It excepted a claim of the partnership against Henry Odom, and provided that either partner might sue in the name of the partnership to collect that debt and the proceeds would be equally divided. The agreement provided that if the audit should show that Kennedy had withdrawn from the partnership more than Broadhead that he, Kennedy, had the privilege of conveying to Broadhead within ten days his interest in the partnership assets in full settlement of his liability to all creditors and to Broadhead. The agreement stipulated that Broadhead had obtained certain lumber from the partnership which had been hauled by Henry Odom, and that the auditors should ascertain and determine the value thereof. It recited that Broadhead had obtained other lumber from the partnership of the value of $3,028.44 and that he, Broadhead, was to be credited with $1,500 he had personally paid upon partnership debts which was not reflected in the partnership books.

The deed of trust conveyed four parcels of real estate located in Wayne County and a leasehold interest in another parcel. It included the buildings and improvements and all of the machinery, fixtures, equipment and personal property "now located upon said land and used in connection with" the operation of the sawmill by Kennedy Lumber Company. It listed in detail a great many items of personal property connected with the operation of the business. It also included certain merchantable

pine timber. The instrument was given to secure the creditors of the Kennedy Lumber Company, the names of whom and the amount due each to be ascertained by the auditors, and provided that within ten days after the auditors made their report any creditor might request the trustee to foreclose the deed of trust, the proceeds of the sale to be used in paying the expense of the sale, and the creditors, the balance to be distributed between the partners according to the audit.

The audit covers a period from March 1, 1946, to May 30, 1950. It purported to ascertain and determine the amount owing by and to the partnership, including the partners, the book value of the assets, and the respective interests of the partners thereunder. The fiscal year of the partnership ended on February 28th. The audit shows a profit for the fiscal year ending in 1947 to be $43,135.48; for the next year the profit was $23,563.90; for the year ending in 1949, there was a loss of $2,710.85; and for the year ending in 1950, there was a loss of $27,231.65—a total net income for the period of operation of $36,756.88. It listed total liabilities of the company on May 30, 1950, as being $7,834.75. It showed the equities of the parties to be as follows:

"C. S. Kennedy (deficit)................$10,695.70
Sam Broadhead ................................. 30,914.32"
and the total assets of the company to be $28,053.37.

Kennedy answered. He admitted the execution of the dissolution agreement, and of the trust deed, and the making of the audit. He alleged that the audit was not correct and not complete. He admitted the report showed that the partnership was indebted to Broadhead in the sum of $41,571.84, but he averred that this was incorrect. He denied that Broadhead was the best bidder at the foreclosure sale, and denied Broadhead paid $23,000, the amount of his bid, and he denied the partnership was indebted to Broadhead, but, on the other hand, averred

Broadhead was indebted to the partnership and to him, as hereinafter shown.

Kennedy filed a cross bill. He alleged the existence and operation of the partnership for the period above stated. He admitted Broadhead furnished most of the capital. He said that he devoted all of his time to the business and was to receive a salary of $500 a month, none of which was paid, and that the amount of his unpaid salary was $17,500. He said the dissolution agreement was not binding because Broadhead, without his knowledge, had converted many thousands of dollars worth of assets of the partnership unknown to him; that when the contract and deed of trust were executed, Broadhead had converted to his own use a large amount of the partnership's assets. He also averred that after the execution of the deed of trust and before the sale thereunder, Broadhead had removed from the plant and converted to his own use assets of the partnership to the amount of $55,000. He charged that Broadhead sold a large quantity of pine lumber to the partnership, representing the quantity to be 1,000,000 feet, the total agreed price therefor being $60,000. He said in fact the quantity was 700,000 feet, and that it was picked over lumber worth only $40 per thousand, and that the partnership was entitled to a credit of $32,000 against Broadhead. He averred that on July 31, 1947, a man by the name of Earl Love shipped a carload of lumber of the value of $1,678 to Broadhead, and this was erroneously charged to the partnership. He said that in the audit Broadhead was given credit for $416.02, which Broadhead claimed he paid the tax collector of Wayne County, but that this was not true; that, with the intent to hurt and harm Kennedy Lumber Company, Broadhead purchased another sawmill nearby, and that he did all he could to damage Kennedy Lumber Company. He averred that from April 13, 1949, to January 15, 1950, Broadhead was in complete charge of Kennedy Lumber Company, and

that he, Broadhead, concealed the true facts from Kennedy; that Broadhead should be charged with $55,000, the value of partnership assets converted by him, and with $32,000, the difference in the represented and the actual value of the pine lumber purchased from Broadhead, and that Broadhead be charged with $1,678 collected from Love, and for the $416.02 erroneously claimed to have been paid the tax collector, making a total amount owing by Broadhead to the company of $89,094.02; that Broadhead breached the partnership agreement by purchasing the competing mill and causing Kennedy Lumber Company to lose a large sum of money, all in the total sum of $179,718.47, for which amount he prayed for a personal decree against Broadhead in favor of the partnership.

In his answer Broadhead took issue on all of the foregoing claims.

Kennedy filed an amended answer and cross bill. He detailed the agreement under which he says the Kennedy Lumber Company purchased from Broadhead the pine lumber, reasserting that Broadhead represented the amount to be 1,000,000 feet, whereas it was only 700,000 feet, and of such poor quality as to be worth only $40 per thousand. He also averred that Broadhead represented that he was selling to Kennedy Lumber Company 40,000 feet of kiln dried, fine yellow pine lumber worth $125 per thousand, which lumber was never delivered to the Kennedy Lumber Company. He repeated the damage he claimed was caused the Kennedy Lumber Company by the purchase and operation by Broadhead of a nearby competing plant. He also reaverred that, without his knowledge, and both before and after the execution of the dissolution agreement and the trust deed, Broadhead had removed from the plant much of the machinery, equipment, and lumber; and that the value of the lumber removed was $35,000 and the value of the machinery and equipment was $55,000. He again prayed for a personal

decree against Broadhead for approximately $224,983.27 in favor of the partnership.

In his answer to the cross bill, Broadhead took issue on the affirmative facts set out in Kennedy's cross bill, and as to the sale by him of the pine lumber, he averred that he sold it in bulk as stacked upon the yards of the Broadhead Lumber Company; that he made no representation as to the quantity or quality of the lumber, and that Kennedy inspected it before it was purchased by the Kennedy Lumber Company.

It will therefore be seen that the main issues presented to the lower court were these:

(1) Were the parties bound by the dissolution agreement;

(2) Was Kennedy entitled to a salary;

(3) Was Kennedy entitled to $2,881.12, expenses he claimed to have incurred;

(4) Was Kennedy entitled to one-half of the value of the Love carload of lumber;

(5) Was Kennedy entitled to any damage because of Broadhead's purchase and operation of a competing mill;

(6) Did Broadhead misrepresent the quantity and quality of the pine lumber he sold to Kennedy Lumber Co.;

(7) Did Broadhead remove lumber, machinery, and equipment from the Kennedy lumber yard and convert same to his own use without paying therefor, and without the knowledge and consent of Kennedy;

(8) Was the price bid by Broadhead at the foreclosure sale the reasonable and fair value of the existing property when the deed of trust was executed; and

(9) Finally, what was an equitable and fair adjustment between the parties.

In his opinion the chancellor found from the evidence that (1) Broadhead was the dominant partner in the business; (2) that Broadhead breached the dissolution agreement, and Kennedy had the right to treat it as a

broken contract; (3) that Kennedy was not entitled to any salary; (4) that Kennedy was entitled to the sum of $2,881.12, reimbursement of expenses; (5) that Kennedy was entitled to one-half of the value of the Earl Love car of lumber; (6) that Kennedy was not entitled to recover any amount as a result of the purchase and operation by Broadhead of a nearby competing sawmill located at what was called Woodward Switch; (7) that the lumber purchased by the Kennedy Lumber Company from Broadhead was worth $10,000 less than the agreed purchase price; (8) that Broadhead, both before and after the execution of the dissolution agreement and the deed of trust, removed and converted machinery, equipment, and lumber from the Kennedy Lumber Company yards of the value of $50,000, and this was done before foreclosure of the deed of trust; (9) that the partnership was entitled to a credit of $27,000, the difference between the actual value of the mill and the amount bid at the sale. The opinion also adjusted certain small items, such as the aggregate of certain retail sales, amounting to $700, for which the partnership had not received the money.

The chancellor appointed a master to state an account in accordance with the findings in his oral opinion. The final decree was entered, confirming in Broadhead title to all of the property, both real and personal, owned by and in possession of the partnership at the time of the sale under the deed of trust, and after adjusting all of the equities and claims of both parties, adjudicated Broadhead indebted to Kennedy in the sum of $12,240.13, and assessed all the costs against Broadhead except that he charged the parties equally with the amount allowed the master, to-wit, $50 for his services. From this decree Broadhead appealed.

On this appeal Broadhead urges, as his main contentions, first, that the proof is insufficient to support the findings of fact of the chancellor which are adverse to

him, and, second, that even though such findings are justified, they could not modify the terms, or legal effect, of the dissolution agreement, the audit and the trust deed and its foreclosure.

On the first question, the pleadings and oral proof consist of five volumes, comprising nearly twelve hundred pages, and, in addition, all of the original books and records of the partnership for its duration were sent up as a part of the appeal record. It is said in the brief that a week was consumed in the trial of the cause in the lower court. It is obvious from the pleadings, the questions involved, the extent of the oral testimony and the documentary records that it would be impossible, within any reasonable limit, to pick out, separate, assort and assemble the testimony so as to apply it, pro and con, to the various questions of fact involved in this litigation. Early v. United States Fidelity and Guaranty Co., 181 Miss. 162, 176 So. 720. We believe it is sufficient to say that the record has been studied by two of the judges, a digest of all the testimony has been presented to the court en banc, and the most pertinent parts thereof, applicable to the various questions, has been read verbatim to that tribunal, and after a careful consideration, we are of the opinion the chancellor did have substantial evidence to support his findings—at least, we are unable to perceive that we would be justified in reversing such findings.

On the second question, appellant invokes the rule that a written agreement of dissolution containing the full terms of the settlement and deliberately executed by the partners is binding on them in the absence of fraud, mistake or error. 68 C. J. S., pg. 847, Sec. 334. The authorities all seem to hold that a dissolution agreement, or an account stated, may be impeached and opened up for fraud, mistake or error, unless the complaining party is estopped from so doing. 1 Am. Jur., pg. 286, Secs. 31 and 32; Smith v. Rosson, (Ala.), 171 So. 375. There

is no question here of estoppel on the part of Kennedy. The difficulty is not in the statement of the rule but in its application to the facts of this case. However, if it be true that Broadhead was the dominant partner in the conduct of the partnership business; that Kennedy incurred, and paid, expenses to the amount of $2,881 about the partnership affairs for which he was not reimbursed; that Broadhead misrepresented the quantity and quality of lumber he was selling Kennedy Lumber Company, and thereby violated his fiduciary duty to said partnership, and Kennedy did not know the true facts, to the damage of the partnership in the sum of $10,000; that Broadhead removed from Kennedy Lumber Company yards and converted to his own use a large quantity of lumber; that Broadhead, both before and after the execution of the dissolution agreement and the trust deed, but before the foreclosure of the trust deed, dismantled, removed and converted to his own use, quantities of machinery, equipment, etc., belonging to the partnership, then the dissolution agreement, audit and trust deed are not binding to release the parties from any and all further obligations, as they purport to do, and that it was competent to show the facts that were shown in this proceeding. It is pertinent to observe that Kennedy became an employee of Broadhead in March 1949 and that thereafter he was located at different places in the discharge of the duties of his private employment and was not at Waynesboro. It is also important to note that, according to the evidence, much of the partnership machinery and equipment, as well as lumber from the Kennedy yards, were removed and converted by Broadhead after the execution of the agreement and trust deed, and, of course, the provisions of the prior dissolution agreement and the execution of the trust deed would not cover such subsequent acts, nor preclude proof of them.

After long and careful study and consideration of the record we have concluded we would not be justified in reversing the chancellor.

Affirmed.

All Justices concur except *Gillespie, J.*, who took no part.